IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| JOSEPH L. HOSONITZ, | ) Civil Action No. 4:08-3086-HMH-TER |
| Plaintiff, | ) |
| v. | ) |
| | ) **REPORT AND RECOMMENDATION** |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF | ) |
| SOCIAL SECURITY, | ) |
| Defendant. | ) |

This is an action brought pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying plaintiff's claims for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

**I. PROCEDURAL HISTORY**

Plaintiff, Joseph L. Hosonitz, filed applications for DIB and SSI on June 29, 2004, with an alleged onset of disability of the same date. (Tr. 55; see also Tr. 13). Plaintiff requested a hearing before an administrative law judge (ALJ) after his claims were denied initially and on reconsideration. (Tr. 26, 27, 168, 169). After plaintiff's October 5, 2005 hearing (see Tr. 173), the ALJ issued a decision dated May 26, 2006, finding plaintiff not disabled because he retained the

residual functional capacity to perform a range of sedentary work which existed in significant numbers in the national economy (Tr. 19). After the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 5), the ALJ's decision became the Commissioner's final decision for purposes of judicial review under 42 U.S.C. Section 405(g). See 20 C.F.R. §§ 404.981 and 416.1481.[1] Plaintiff filed the instant action on September 8, 2008.

## II. FACTUAL BACKGROUND

At the time of his hearing in front of the ALJ, plaintiff was forty-one years of age. (Tr. 176). The ALJ found that plaintiff has at least a high school education and past relevant work as a cab driver and dispatcher. (Tr. 18, 19). According to the ALJ, plaintiff suffered from morbid obesity, sleep apnea, restrictive pulmonary disease, degenerative joint disease in his left knee, and hypertension. (Tr. 14-15).

## III. DISABILITY ANALYSIS

In his brief before the Court, plaintiff argues that the Commissioner's findings are in error because the ALJ:

1. incorrectly applied the Listings criteria;
2. failed to accurately delineate the sit/stand option;
3. mistakenly assessed plaintiff's credibility.

The Commissioner contends otherwise and urges that substantial evidence supports the determination that plaintiff was not disabled.

---

[1] All of this Court's references to the Code of Federal Regulations (C.F.R.) are to the 2006 edition.

In his decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.

2. The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 404.1520(b), 404.1571 et seq, 416.920(b) and 416.971 et seq.).

3. The claimant has the following severe impairments: obesity, degenerative joint disease of the left knee, restrictive pulmonary disease, and sleep apnea (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform "sedentary" work which is unskilled and does not require climbing, crawling, balancing, exposure to industrial hazards, or concentrated exposure to pulmonary irritants. He is restricted to occasional crouching, stooping, and kneeling and requires a sit/stand option at will.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on March 11, 1964 and is a younger individual age 18-44 (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability due to the claimant's age (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

> 11. The claimant has not been under a disability, as defined in the Social Security Act, from June 29, 2004 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 14-20).

Under the Social Security Act (the Act), 42 U.S.C. § 405(g), this Court's scope of review of the Commissioner's final decision is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether he applied the correct law. Richardson v. Perales, 402 U.S. 389 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). "Substantial evidence" is that evidence which "'a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. at 401 (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The Court's narrow scope of review does not encompass a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405 (g); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established. Five questions are to be asked sequentially during the course of a disability determination. See 20 C.F.R. §§ 404.1520 and 416.920. An ALJ must consider whether: (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the claimant has an impairment which equals a condition contained in the Act's listing of impairments; (4) the claimant has an impairment which prevents past relevant work; and (5) the claimant's impairments prevent him from engaging in any substantial gainful employment. If an individual is found not disabled at any step, further

4

inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); Hall v. Harris, 658 F.2d 260 (4th Cir. 1981). An ALJ's factual determinations must be upheld if supported by substantial evidence and if proper legal standards were applied. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

Under 42 U.S.C. Section 423(d)(5), the plaintiff has the burden of proving disability, which is defined by Sections 423(d)(1)(A) and 1382c(a)(3)(A)[2] as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See also 20 C.F.R. § 404.1505(a); Blalock, 483 F.2d at 775.

## IV. ARGUMENTS

A. The Listings

Plaintiff contends that the ALJ erred in his step three determination in failing to find that plaintiff met Listing 1.02. The "Listings," found at 20 C.F.R. part 404, subpart P, Appendix 1,[3] "is a catalog of various disabilities, which are defined by 'specific medical signs, symptoms, or laboratory test results.'" Bennett v. Sullivan, 917 F.2d 157, 160 (4th Cir. 1990) (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990)). When a claimant satisfies a Listing by meeting all its specified medical criteria, he presumably qualifies for benefits. See id.

---

[2] The regulations applying these sections are contained in different parts of Title 20 of the Code of Federal Regulations (C.F.R.). Part 404, "Federal Old-Age, Survivors and Disability Insurance," relates to title II of the Act, see 20 C.F.R. § 404.1, and Part 416, "Supplemental Security Income for the Aged, Blind, and Disabled," relates to the Act's title XVI, see 20 C.F.R. § 416.101. Since the relevant portions of the two sets of regulations are identical, the citations in this report will be limited to those found in Part 404.

[3] Although the Listings are contained only in part 404, they are incorporated by reference in Section 416.925 of subpart I of part 416.

Listing 1.02 lists the requirements for finding that a major dysfunction of a joint can constitute a disability. See 20 C.F.R., Pt. 404, Subpt. P, App. 1 [hereinafter cited as "The Listings"], 1.02. The dysfunction must be characterized by a gross anatomical deformity, chronic joint pain with signs of limited motion or other abnormal motion of the joint, and findings of joint space narrowing, bony destruction, or general stiffness. Listing 1.02A requires that the dysfunction in the joint involve a major peripheral weight-bearing joint, such as the hip, knee, or ankle, and result in "inability to ambulate effectively." Id.

The introductory comments to the Musculoskeletal Listings provide guidance for defining an inability to ambulate effectively:

> Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)

Id. 1.00B2b(1). The comments also include several examples of ineffective ambulation, such as the inability to walk a block at a reasonable pace on rough or uneven surfaces; use public transportation; perform routine activities that require walking, such as shopping and banking; and climb a few steps at a reasonable pace with the use of a hand rail. Id. 1.00B2b(2).

Plaintiff asserts that "the medical evidence easily meets the initial medical requirements" of Listing 1.02, and that the ALJ "conceded this point." Pl.'s Br. at 13. The undersigned, however, agrees with the Commissioner that plaintiff's conclusion is over-reaching. In his discussion of Listing 1.02, the ALJ merely stated that there was "objective evidence of degenerative joint disease of the left knee" (Tr. 15); there is no statement in the record that plaintiff's knee impairment

6

incorporated a "gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability)," The Listings, 1.02. In fact, the medical consultants who reviewed plaintiff's records failed to find that he met *any* listing. (See Tr. 28, 29; 168, 169). Cf. 20 C.F.R. § 404.1526 (at step 3, "[w]e also consider the opinion given by one or more medical or psychological consultants").

The ALJ, however, reasoned that plaintiff had not shown that he was unable to ambulate effectively, first citing to the consultative examiner's report that plaintiff "had some gait abnormalities but he did not need orthotics or assistive devices." (Tr. 15-16 (citing Tr. 149)). The ALJ added that plaintiff "testified that he is able to walk and perform activities such as shopping although he has to stop and rest due to his shortness of breath." (Tr. 16).

Plaintiff counters that his lack of need for an assistive device "does not provide a basis *in itself* to find the Plaintiff is able to ambulate effectively," Pl.'s Br. at 14 (emphasis added), and he is correct. The Commissioner, in adopting the introductory comments, explained that

> The criteria do not require an individual to use an assistive device of any kind. The first sentence of final 1.00B2b stresses that "[i]nability to ambulate effectively means an extreme limitation of the ability to walk." The ensuing explanation and examples should make it clear that this applies to anyone who cannot walk adequately. The explanation is intended to mean that individuals who can only walk with the aid of hand-held assistive devices requiring the use of both upper extremities would meet the definition of inability to ambulate effectively. In addition, anyone with an ineffective gait who cannot use assistive devices would also meet the definition of inability to ambulate effectively.

"Revised Medical Criteria for Determination of Disability, Musculoskeletal System and Related Criteria," 66 Fed. Reg. 58010-01, 58027-28 (Nov. 19, 2001). It remains, however, that under the Listings, "[i]neffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." The Listings, 1.00B2b(1).

Accordingly, the ALJ did not err in relying in part on this factor in finding whether or not plaintiff could ambulate effectively.

Plaintiff adds that, instead of showing that he did *not* meet Listing 1.02, the examiner's comments "largely support a finding of disability under the listing, as [the doctor] indicated that Plaintiff would 'most likely' be unable to perform even the physical requirements of sedentary work due to his physical impairments." Pl.'s Br. at 15 (citing Tr. 149). But such a general opinion is not sufficient to establish disability under a Listing: "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." Zebley, 493 U.S. at 530 (emphasis added). Thus, plaintiff has failed to show that the ALJ's analysis was flawed.[4]

Further, the ALJ also relied on plaintiff's own testimony to establish that he was capable of effective ambulation. But plaintiff also objects to this portion of the analysis, arguing that, to the contrary, his testimony *supports* an inability to ambulate effectively. Plaintiff stated that he had "trouble getting into the [hearing] building," having to stop several times to catch his breath, and can walk only about 100 feet before he starts having hip pain. (Tr. 180-82). He contends that his testimony, together with his extreme obesity and knee impairment, "would seem to support the examples" provided in Listing 1.00B2b(2). But although plaintiff may have testified to an inability

---

[4]Plaintiff complains that the ALJ did not "fully analyze" whether he met the Listing, Pl.'s Br. at 17, but given his failure to establish a gross anatomical abnormality, he surely has established no harm in such failing, if any. "It 'may be appropriate to supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance, i.e., where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.'" Hackett v. Barnhart, 475 F.3d 1166, 1175 (10th Cir. 2007) (quoting Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004)). See also Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (affirming where "there is no question but that [the ALJ] would have reached the same result notwithstanding his initial error").

8

to ambulate effectively, not even his own statements tie this inability to a "gross anatomical deformity." In fact, the only objective medical evidence that plaintiff suffers from any medically determinable musculoskeletal impairment is an x-ray of his left knee; studies of plaintiff's left hip and lumbar spine were normal.[5] (Tr. 150). Hence, plaintiff's arguments provide no cause for this Court to remand.

B. Sit/Stand Option

Plaintiff asserts that the ALJ failed to specify the frequency with which he must exercise his sit/stand option. The undersigned, however, finds this to be a harmless error, at most.

At step five of the sequential evaluation, the Commissioner bears the burden of providing evidence of a significant number of jobs in the national economy that a claimant could perform. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The purpose of bringing in a vocational expert (VE) is to assist the ALJ in meeting this requirement. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) (citation omitted). For a VE's opinion to be relevant, "it must be based upon a consideration of all other evidence in the record . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005) (quoting Walker, 889 F.2d at 50); see also English v. Shalala, 10 F.3d 1080, 1085 (4th Cir. 1993). An ALJ has discretion in framing hypothetical questions as long as they are supported by substantial evidence in the record, but the VE's testimony cannot constitute substantial evidence in

---

[5]Plaintiff argues that it is not his burden to provide such proof, but he is mistaken. As stated hereinabove, the Act provides that the *plaintiff* has the burden of proving disability. See 42 U.S.C. § 423(d)(5). See also Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so."); Pass v. Chater 65 F.3d 1200, 1203 (4th Cir. 1995) ("The applicant bears the burden of production and proof during the first four steps of the inquiry.").

support of the Commissioner's decision if the hypothesis fails to conform to the facts. See Swaim v. Califano, 599 F.2d 1309, 1312 (4th Cir. 1979). Yet the hypothetical posed to the VE need only reflect those impairments supported by the record. See Hunt v. Massanari, 250 F.3d 622, 625 (8th Cir. 2001); Barnett v. Apfel, 231 F.3d 687, 690 (10th Cir. 2000); Cass v. Shalala, 8 F.3d 552, 556 (7th Cir. 1993).

The VE at plaintiff's hearing answered the ALJ's hypothetical – describing a claimant who requires a "sit stand option at will" (Tr. 198) – with jobs that could be performed with such a limitation (Tr. 199), thus providing a significant number of jobs in the national economy that plaintiff could perform. Even plaintiff's description of such an option as allowing for sitting for ten to fifteen minutes followed by standing for ninety seconds, along with additional restrictions, did not alter the VE's response that there were jobs that such a claimant could perform. (See Tr. 201-02).

The court in Davis v. Apfel, 239 F.3d 962 (8th Cir. 2001), when presented with a similar argument, responded:

> The hypothetical here addressed Davis' need to sit and stand at will, and required the expert to limit her consideration to jobs which would "allow for alternate sitting and standing." In response to a specific question from the ALJ, the expert indicated that band attaching, polishing, mounting, and order clerk jobs would permit Davis to sit and stand and would not require her to maintain a certain position for an extended period of time. These questions underscored Davis' need to sit and stand at will, and the vocational expert took this need into account in assessing the jobs Davis was capable of performing.

Id. at 966; see also Schmidt v. Astrue, 496 F.3d 833, 845 (7th Cir. 2007) (determining that ALJ's analysis was sufficient where he allowed plaintiff "to sit or stand at her 'own option'"). Cf. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002) (with regard to an at-will sit/stand option, holding, "A special clarity criterion would require the agency to support its decisions by more than the statutorily

designated substantial evidence burden."). As the VE here satisfied the Commissioner's step five burden, any error of the ALJ in omitting the sit/stand frequency was cured.

C. Credibility

Plaintiff argues that the ALJ committed errors in performing the credibility assessment. Under Craig v. Chater, 76 F.3d 585, 591-96 (4th Cir. 1996), subjective complaints are evaluated in two steps. First, there must be documentation by objective medical evidence of the presence of an underlying impairment that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged. Not until such underlying impairment is deemed established does the factfinder proceed to the second step: consideration of the entire record, including objective and subjective evidence, to assess the credibility of the severity of the subjective complaints. See also 20 C.F.R. § 404.1529(b); Social Security Ruling (SSR) 96-7p, 61 Fed. Reg. 34483-01, 34484-85.

The ALJ may choose to reject a claimant's testimony regarding his pain or physical condition, but she must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. Hatcher v. Sec'y, Dep't of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989) (quoting Smith v. Schweiker, 719 F.2d 723, 725 n.2 (4th Cir. 1984)). "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 61 Fed. Reg. at 34486.

Plaintiff's first claim is that the ALJ "did not perform an adequate analysis" of Craig's first prong, accusing the ALJ of employing "boilerplate," and referencing an apparently unpublished Report of another of this Court's magistrate judge's in another case, without any citation to

11

recognized law, and without any allegation of harm to himself. In light of these factors, the undersigned finds no need to address this issue.

Plaintiff next objects to the ALJ's reasoning to discount his statements, which the undersigned finds to be complete and fully in accordance with the regulations. Ruling 96-7p provides that, when the claimant's statements about her pain or other symptoms are not substantiated by objective medical evidence, as in plaintiff's case, "the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record," 61 Fed. Reg. at 34485, specifically, the factors listed in 20 C.F.R. Section 404.1529(c)(4). The ALJ did so, as follows:

(i) "Your daily activities": Plaintiff testified that he watches television, occasionally reads the newspaper, and has no outside activities (see Tr. 16), but the ALJ noted that plaintiff was able to work for years despite his morbid obesity and respiratory problems" (Tr. 17). Cf. Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001) (finding "working at a job" to be "inconsistent with complaints of disabling pain"). Indeed, plaintiff stopped working *not* because he was unable to continue because of disabling impairments but, rather, because he was fired.[6] (See Tr. 148).

(ii) "The location, duration, frequency, and intensity of your pain or other symptoms": Plaintiff complained of shortness of breath; pain in his knees, back and hips; fatigue; inability to concentrate; and inability to sleep. (See Tr. 16). But the ALJ added that plaintiff's complaints were inconsistent with his lack of medical treatment. (Tr. 17). See Johnson, 434 F.3d at 658 (the failure to seek help constitutes a reason for discounting subjective claims).

---

[6]During a sleep evaluation performed after he was fired, plaintiff told the physician that treatment had helped his sleep and alleviated his sleepiness, but plaintiff stopped the treatment, "for reasons that are somewhat unclear at this point." (Tr. 140). See Hunter v. Sullivan, 993 F.2d 31 (4th Cir. 1992) (claimant's failure, inter alia, to follow medical and physical therapy regimen supported ALJ's inference that claimant's pain was not as severe as he asserted).

(iii) "Precipitating and aggravating factors": Plaintiff stated that his knees hurt when he sits or stands, and that he suffers pain with either walking or sitting. (Tr. 16).

(iv) "The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms": Plaintiff related that he had not taken any medication in the previous year, and the ALJ found that his "limited use of pain medication" supported a finding that his pain and other symptoms were not disabling. (Tr. 17 (citing Hunter v. Sullivan, 993 F.2d 31 (4th Cir. 1992)). See also Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (if symptoms are, or can be, reasonably controlled by medication, they may not be considered disabling under the Act); Shively v. Heckler, 739 F.2d 987, 990 (4th Cir. 1984) (the weakness of pain medication is a factor to be considered in assessing the severity of a claimant's pain).

(v) "Treatment, other than medication, you receive or have received for relief of your pain or other symptoms": Plaintiff testified that his use of a "CPAP"[7] machine makes him feel better. (See Tr. 16. But see note 7, supra).

(vi) "Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.)": Plaintiff said that he had to sit down to relieve his pain when he walks, and stand up to relieve his pain after sitting. (See Tr. 16).

---

[7] An abbreviation of "continuous positive airway pressure," CPAP is "a technique of respiratory therapy, in either spontaneously breathing or mechanically ventilated patients, in which airway pressure is maintained above atmospheric pressure throughout the respiratory cycle by pressurization of the ventilatory circuit." Stedman's Medical Dictionary 421, 1442 (27th ed. 2000).

(vii) "Other factors concerning your functional limitations and restrictions due to pain or other symptoms": Plaintiff stated that he must sit to cook, lean on the washer to do laundry, and lean on the cart when shopping. (See id.).

Despite the ALJ's explanation, plaintiff argues that he "seems to require that the Plaintiff's specific allegations regarding his limitations be independently corroborated by the medical records." Pl.'s Br. at 23. Actually, this is exactly what the ALJ, and Social Security law, at least in part, requires. Craig recognizes that, "[a]lthough a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent *with the available evidence*[.]" 76 F.3d at 595 (emphasis added). Ruling 96-7p explains that "consistency, both internally and *with other information in the case record,* of the claimant's statements, especially to the extent that they are consistent with the medical signs, laboratory findings, and *other information provided by medical sources*" is a "strong indication of credibility." 61 Fed. Reg. at 34486 (emphases added). It adds that "[p]ersistent attempts by the individual to obtain relief of pain or other symptoms . . . may be a strong indication that the symptoms are a source of distress to the individual and generally lend support to an individual's allegations of intense and persistent symptoms." Id. at 34487.

These axioms are summarized and simplified in Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994), which states: "[A]n unexplained inconsistency between the claimant's characterization of the severity of her condition and the treatment she sought to alleviate that condition is highly probative of the claimant's credibility." Id. at 930. See also Singh v. Apfel 222 F.3d 448, 453 (8th Cir. 2000) ("A claimant's allegations of disabling pain may be discredited by evidence that the claimant has received minimal medical treatment and/or has taken only occasional pain medications."). It is only

reasonable to assume that, when one suffers from symptoms that make merely walking unbearable, one will seek out relief. There is no evidence that plaintiff ever had health insurance (he testified that he was able to attend a clinic while living in Hilton Head because he was a resident (Tr. 177)), yet he regularly sought out medical care for his hypertension and, periodically, for his obesity (see Tr. 106-33). Despite his testimony of excruciating back, hip and knee pain, however, there is no evidence that he ever sought treatment for them or, for two years preceding his alleged onset of disability, for his shortness of breath.

Accordingly, the ALJ explained – with specific references to the evidence, as urged by plaintiff (or, more particularly, to the *lack* of evidence) – how plaintiff's statements were "inconsistent":

> The testimony was credible to the extent that the claimant cannot perform work requiring heavy lifting or prolonged standing and walking but not to the extent that he is disabled as defined by the Regulations. His allegations regarding the intensity and limiting effects of his pain and other symptoms are not credible because they are inconsistent with his own statement to his treating and examining physicians. None of the medical reports contained in the record contain complaints of symptoms to the extent alleged by the claimant. . . .
>
> His testimony regarding the intensity of his pain is also inconsistent with his lack of medical treatment. The claimant testified that he cannot afford medical treatment and that he has not taken any medication in over a year. He has apparently not sought treatment at a clinic or an emergency room since 2004. A claimant's limited use of pain medication, failure to sustain any consistent medical regimen for treatment, lack of hospitalizations or emergency room visits, or other significant treatment for pain constitute specific evidence which supports an acceptable credibility determination that pain and other symptoms are not disabling. [Hunter].

Tr. 16-17. Because the ALJ correctly applied legal principles, plaintiff has set forth no reason for remand or reversal.

## CONCLUSION

Despite the plaintiff's claims, he has failed to show that the Commissioner's decision is not supported by substantial evidence. This court is not to substitute its own judgment for that of the Commissioner but is only to review the record to verify that substantial evidence exists to support the ALJ's decision and that proper legal principles were applied. Based upon the foregoing, this Court recommends the decision of the Commissioner be affirmed. Therefore, it is

RECOMMENDED that the Commissioner's decision be affirmed.

Respectfully submitted,

January 29, 2010      s/Thomas E. Rogers, III
    Thomas E. Rogers, III
Florence, South Carolina      United States Magistrate Judge